We'll move on to our next case, which is the United States v. Camacho-Montalvo. Mr. Doesberger. Good morning, your honors. I represent Javier Camacho-Montalvo, the defendant appellate in this appeal.  The sentencing judge passed over in silence three of Mr. Camacho's principle mitigation arguments at sentencing and failed to meaningfully consider a fourth principle argument. Mr. Camacho was sentenced to 46 months for illegal reentry after deportation following a felony. His first argument was... He has an extraordinary criminal history. His criminal history... I mean, I've never seen one with 63 items, 63 offenses. That's remarkable. How old is he? and committed a felony for which he was subsequently deported. He returned illegally and for 10 years there were no convictions. He was deported, came back, and for 13 years, in the remaining 13 years, there were four convictions. Three DUIs. He's got battery and assault, criminal trespass to land, domestic battery. I believe there were a number of arrests. That's true. Pardon? There were a number of arrests. But in terms of actual convictions and counted convictions, most of the arrests never resulted in convictions. But his first argument was that he requested a variance from the 12-level guideline enhancement for illegal reentry after deportation because of the harsh impact of the guideline enhancement generally and in his unique circumstances. This court has ruled in Reyes-Hernandez that sentencing ranges for illegal reentry cases often are unduly harsh and disproportionate to the seriousness of the offense. In Schmitz and its sentencing judges may vary... I don't understand. So this is what, 46 months or something? Yes. It seems entirely reasonable. You say mostly arrests, but he's got convictions in his 40s. Resisting, obstructing a peace officer is age 42. Pleaded guilty. I believe that wasn't a count of defense. I'm sorry? It wasn't a count of defense in terms of his criminal history score. Why not? I think the sentence that he got wasn't long enough to justify counting that. But in any event, in Schmitz, this court ruled that a sentencing judge must explicitly address the argument about an enhancement, the harsh impact of a sentencing enhancement, when it's tailored to the defendant's unique circumstances. And here it added 31 months to the low end of his sentencing range, and he was sentenced at the low end of the range. So it had a very significant impact, and the sentencing judge did not consider our arguments about the reasons for a variance from this particular guideline enhancement, which... He left crime with such frequency. Why would one think that after, what, 11 months in prison or something, if he got the minimum sentence, whatever he wanted him to have, that he wouldn't continue on his way with all his alcoholism? Well, that's another one of our arguments, was that he is not likely to reenter after deportation. He's going to be deported after serving his sentence. He's not likely to reenter. Why? Because the reasons for his reentries have vanished. They've changed. He came back first at age 23 to rejoin his wife and infant son, who was less than a year old at the time. Stayed 16 years. Second reentry came in because his children were teenagers and his mother was ill. Now his mother wants him to go back to Mexico where he's got friends. She doesn't want him here. His children are grown. They're adults. His wife has married... Where are they? Are they in the United States? Yes, they're here in Chicago. His wife remarried somebody else. He has no reason to come back, and at age 46, he's tired of being in jail. He wants to start a new life, and he's got to start a new life in Mexico where he's got three siblings, friends who can help him start out with a place to live and work, and he wants to start his life all over again. He doesn't want to... Well, why hadn't he voluntarily returned to Mexico? Well, before he was arrested, his mother was having some medical problems, and he was living with his mother and assisting his mother and two nieces who had children in Chicago, doing a lot of odd jobs around the house, fixing cars, working at jobs as he could pick them up. So he was... And the reasons for the felony that was the predicate conviction that led to his first deportation, those offenses are over two and a half decades old. So we argued that, at least in our sentencing memo and at sentencing, that the age, the stale datedness of those offenses, his youth at the time... But he continues into his 40s with very frequent offenses. Well, there was a 10-year period where there were no offenses, at least no convictions, counted convictions for offenses, and then he started having problems with alcoholism, and it became an addiction, and his remaining counted offenses, three DUIs, and another offense, the total time he spent in jail was 24 months. So at least in terms of the judges sentencing him at that time, they didn't feel that those offenses were all that serious. And in any event, he hasn't had any convictions for any violent crimes or more serious offenses. Okay, well, thank you, Mr. Prince, but your time has expired. Mr. Fullerton? Good morning. May it please the Court? The district court did not commit any procedural error in sentencing here. The district court was rightly concerned that Mr. Camacho-Montalvo was really an aggravated recidivist, and, in fact, the district court remarked, I think, four times, at least three or four times, during the sentencing hearing, that the defendant's track record was enough, I think, to choke a horse. It didn't give any reason to believe that he would not come back, no reason to believe that he would continue to be on the straight and narrow. Well, Mr. Dustberger says he won't come back because his family situation has changed so radically. He did make that argument, but the district court was not required to accept it, especially given the man's criminal history. Well, did the district judge disagree and think he would come back, or had he other reasons for the sentence? He did say, in fact, the district court did disagree. In fact, on page 25 of the sentencing hearing, the court said, Your counsel says you have every reason not to come back, but your track record says to the contrary. So the district court did believe that Mr. Camacho-Montalvo, having previously twice been deported, would, in fact, come back again after being deported for this offense. And there was ample grounds to think that he was a recidivist who would come back, given his argument about his cultural assimilation. He had family ties to the United States. He had spent, really, decades in the United States since he was a child. And it was the criminal history combined with his prior returns to the United States after deportation that persuaded the court that the 12-level enhancement under the guideline was not unduly harsh. And so the district court did adequately discuss that argument in mitigation. As for the other arguments in mitigation, namely cultural assimilation, his difficult childhood, and so on, the court did address each of them. In terms of the cultural assimilation argument, the court said, We understand when people want to come to this country and don't apply to come to the country lawfully. And the law can be merciful in that instance. That's addressing the cultural assimilation argument. But the court said, That's not the only thing that's going on here. Mr. Camacho Montalvo had come to the U.S. and had essentially abused his presence in the United States. And I think what the district court said was, had cheated America out of what the country had to offer to him, namely the chance to get a job and make a decent life for himself. The court did address each of these arguments in mitigation adequately and arrived at a reasonable sentence. The low end of the guidelines for this man with his criminal history and track record was substantively reasonable. So for these reasons, we'd ask that you affirm the sentence of the district court. Okay. Thank you, Mr. Fullerton. So Mr. Desper, your time has expired, but if you have another minute, if you'd like. The district judge said that because of the two reentries, there's no reason to believe you wouldn't come back again, meaning he did not consider our arguments that the man's family situation had changed. At his age, he wants to start a new life and whatnot. And so I think that's proof that the district judge was missing the point. With respect to our first argument on the guideline range being unduly harsh, this court has said in Schmitz that a sensing judge must explicitly address this argument when tailored to a defendant's unique circumstances. And the district judge did not do that at all. In Pew v. United States, 133 Supreme Court 2072, which was not in my brief, the Supreme Court in abrogating DiMari, a Seventh Circuit case having to do with ex post facto, said that the starting point of a guideline range is important to the sentence imposed. And it was important here because that enhancement increased the low end of his sentencing range by 31 months, and he was sentenced at the low end. So had the district judge listened to our arguments about the decades-old predicate offenses and whatnot, his youthfulness, Thomas Gahl was 21 when he distributed $30,000 in ecstasy on a college campus. Yet the Supreme Court found... Okay. Thank you, Mr. Teschberger. We'll have to end. You were appointed, were you? Yes, I was, Your Honor. Well, we thank you for your efforts. Okay, thank you very much.